**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| **UNITED STATES OF AMERICA and** ) | |
| **PEOPLE OF THE VIRGIN ISLANDS,** ) | |
| ) | |
| **v.** ) | |
| ) | **Criminal Action No. 2013-0003** |
| **ELVIN WRENSFORD and** ) | |
| **CRAIG MULLER,** ) | |
| ) | |
| **Defendants.** ) | |
| ———————————————————— ) | |

**Attorneys:**
**Alphonso G. Andrews, Jr., Esq.,**
**Rhonda Williams-Henry, Esq.,**
St. Croix, U.S.V.I.
        *For the Government*

**Omodare B. Jupiter, Esq.,**
St. Croix, U.S.V.I.
        *For Defendant Elvin Wrensford*

**Martial A. Webster, Sr., Esq.,**
St. Croix, U.S.V.I.
        *For Defendant Craig Muller*

<u>**MEMORANDUM OPINION**</u>

**Lewis, Chief Judge**

THIS MATTER comes before the Court on "Defendant Craig Muller's Motion for a Judgment of Acquittal or in the Alternative Rule 33 Motion for a New Trial." (Dkt. No. 264). For the reasons that follow, the Court will deny the Motion.

## I.        BACKGROUND

Defendants Craig Muller ("Muller") and Elvin Wrensford ("Wrensford") were indicted in January 2013 on charges of possession of a firearm in a school zone, pursuant to 18 U.S.C. §§ 922(q)(2)(A) and 924(a)(1)(B) (Count One); using a firearm during a violent crime, pursuant to

18 U.S.C. § 924(c)(1)(A)(iii) (Count Two); murder in the first degree, pursuant to 14 V.I.C. §§ 922(a)(1) and 923(a) (Count Four); and unauthorized possession of a firearm, pursuant to 14 V.I.C. § 2253(a) (Count Five). In addition, Wrensford was indicted on the charge of possession of a firearm with an obliterated serial number, pursuant to 18 U.S.C. §§ 922(k) and 924(a)(1)(B) (Count Three). The charges related to the shooting on May 10, 2012 of Gilbert Hendricks, Jr., who died on May 12, 2012. Following a twelve-day trial in March 2015, a jury found Muller guilty on Counts One, Four, and Five. Muller timely filed a Motion for Judgment of Acquittal, pursuant to Fed. R. Crim. P. 29, claiming that the evidence was not sufficient to convict him. In the alternative, Muller moved for a new trial, pursuant to Fed. R. Crim. P. 33. (Dkt. No. 264). The United States opposed the Motion. (Dkt. No. 266).

The following evidence, pertinent to Muller's Motion, was elicited at trial.

Witnesses Henry Mason and Mark Xavier were at Ben's Car Wash during the afternoon and evening of May 10, 2012—the day of the shooting. Both men testified that Wrensford and Muller have been friends for a long time. Mason stated that he saw Wrensford and Muller hanging out at the Car Wash on the afternoon of the shooting, and saw a man with a "puff" hair style get into an altercation with Wrensford. Muller came up and joined in the argument. The man started to leave the Car Wash, and Wrensford and Muller followed him, continuing to argue. Wrensford and Muller then left the Car Wash.

Mark Xavier testified that, a short time after Wrensford and Muller left, the man with the "puff" hair style returned in the company of the victim, Gilbert Hendricks, Jr. The man acted as if he was looking for somebody. The man and Hendricks left. Xavier then saw Hendricks return to the Car Wash alone. Around that time, Xavier observed a red truck turn into the Car Wash, moving slowly. It traveled around the back of the Car Wash and turned east onto the main road.

Mason testified that, at that point, Hendricks started to walk away from the Car Wash, heading west, and then started to run. Xavier saw the truck turn around, and both Xavier and Mason saw the truck pass in front of the Car Wash at a high speed. Xavier stated he saw gunfire "spitting" from the passenger window.

Trevor Teague, who was standing with his daughter Tynicia in the Food Town grocery parking lot, located west and on the other side of the street from the Car Wash, testified that he saw Hendricks running down the road in his direction. He also heard and saw shots coming from the passenger side of a red truck. He stated that the red truck turned right onto the road opposite Food Town and stopped, trapping Hendricks. Teague testified that the shooter, leaning out of the passenger window, shot at Hendricks and continued to shoot at him while he was on the ground. The truck then sped north into Estate Princesse.

At trial, Tynicia Teague testified, *inter alia*, that she could not recollect the events surrounding the shooting. She also vacillated between recalling basic details (shots coming from a red truck with "two guys" in it), to stating that her mind was "blank." She admitted signing two statements she had given to the police—one, on the evening of the shooting, which described what had occurred and identified Wrensford, and the other, dated May 13, 2012, in which she identified Muller from a photo array—but also claimed that she could not remember signing anything. Portions of the two statements were admitted into evidence in the Government's case. (Gov't Ex. 92; Gov't Exs. 73A, 73B).[1]

_____

[1] One page of the fourteen-page statement Ms. Teague gave to the police on May 10, 2012, in which she identified Wrensford, was admitted in the Government's case (Gov't Ex. 92). The entire statement was offered by Wrensford and admitted during his case (Wrensford Ex. 8). A two-page document—one page consisting of a statement by Ms. Teague in which she identified Muller and the second consisting of a photo array where she circled and signed her name above Muller's photo—was also admitted in the Government's case. (Gov't Ex. 73A and 73B). The entire document, which consisted of a three-page Statement Narrative, in addition to the items

Ms. Teague testified at trial that the statement she gave to the police on May 13, 2012 in which she viewed a photo array and identified Muller as the driver of the red truck was her statement and the signature on both pages was her handwriting. (Gov't Exs. 73A, 73B). The statement (Gov't Ex. 73A) read: "The male I saw in photo number 4 was the male I saw driving the red pickup truck on May 10, 2012 at 8:00 pm during the shooting incident in front of Food Town[.]" Gov't Ex. 73B was a photo array of six individuals; photograph 4—a photograph of Craig Muller—was circled and Ms. Teague's signature and date appeared above the photograph.

Virgin Islands Police Department Officer Julio Mendez testified that, approximately forty-five minutes after the shooting, he stopped two males in Estate Princesse, approximately one quarter-mile from where the red truck was later found. Officer Mendez described the men as perspiring and nervous; one of them had a green leafy substance like grass in his hair and on his shirt. Mendez began to ask them questions and, when he called for back-up, they ran away. Wrensford was apprehended shortly thereafter by Officer Leon Cruz, who detained him. After Wrensford was transported to the police station, Officer Huertas found a firearm approximately ten feet away from where Wrensford had been standing. DNA expert Tiffany Roy testified that the DNA on the firearm matched Wrensford's DNA. Firearms expert Reynold DeSouza testified that cartridges recovered from the crime scene and from the rear of the red truck, and a bullet retrieved from the morgue—*i.e.*, from Hendricks' body—were fired from that firearm.

Muller's grandfather, Elroy Muller ("Mr. Muller"), testified that on May 14, 2012, Muller asked if he could stay with him, and Mr. Muller agreed. Mr. Muller stated that Muller went to work on Monday, May 15. On Tuesday, May 16, Muller told his grandfather that he was not feeling well. His grandfather told him to go to work anyway. On Wednesday, Muller left for

---

contained in Gov't Ex. 73A and 73B, was offered by Muller and admitted during his case. (Muller Ex. 2).

work and then came home, telling his grandfather that he was sent home. That evening, Muller informed his grandfather that his mother had purchased a ticket for him to travel to New York to see a doctor for his asthma. Muller said he would be staying with family in New York, but did not say how long he would be away. Muller's supervisor at work, Roberto Blewett, testified that Muller never told him that he was feeling ill, never requested sick leave, and never told him he was leaving the island.

One of Muller's co-workers, Ira Matthews, testified that on the Monday or Tuesday morning after the shooting, he heard people at work telling Muller that they heard he was involved in the shooting. Muller responded that he had heard the same thing, but he did not know what they were talking about.

Tomas Garcia, a Customs & Border Protection Officer, testified that, on the morning of May 17, 2012, he was assigned to baggage and customs inspection at the San Juan airport. He received an alert from St. Croix that an arrest warrant had been issued for Craig Muller, who was on the flight from St. Croix to San Juan. Garcia paged Muller in the terminal. When Garcia identified himself to Muller, Muller started to turn around. Garcia advised Muller to place his hands on the counter and told him he was there to pick him up. According to Garcia, Muller put his head down and said that he figured someone was going to pick him up. When they went to the secondary inspection area, Garcia explained that they had received an alert involving Muller and asked if Muller had any issues. Muller broke down crying. Garcia's supervisor escorted Muller to the ticket counter to change his ticket to return to St. Croix.

5

## II.   DISCUSSION

### A.  Motion for Judgment of Acquittal

#### 1.   Legal Principles

Federal Rule of Criminal Procedure 29 provides that "the Court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "'A Rule 29 motion for judgment of acquittal obliges a district court to review the record in the light more favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence.'" *United States v. Freeman*, 763 F.3d 322, 343 (3d Cir. 2014) (quoting *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006)). The court will "'presume that the jury properly evaluated credibility of the witnesses, found the facts, and drew rational inferences,'" and will sustain the verdict "'if there is substantial evidence, taking the view most favorable to the Government, to support it.'" *United States v. Kelley*, 301 F. App'x 172, 175 (3d Cir. 2008) (quoting *United States v. Iafelice*, 978 F.2d 92, 94 (3d Cir. 1992)).

An insufficiency finding should be "'confined to cases where the prosecution's failure is clear.'" *United States v. Garcia,* 490 F. App'x 463, 464 (3d Cir. 2012) (quoting *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005)). Thus, a defendant "challenging the sufficiency of the evidence bears a heavy burden." *United States v. Donna,* 366 F. App'x 441, 450 (3d Cir. 2010) (citing *United States v. Casper*, 956 F.2d 416, 421 (3d Cir. 1992)). It is well-established that, on a Rule 29 motion, evidence should not be viewed in a vacuum but in relation to the totality of the evidence elicited in a case. *See United States v. Pavulak*, 700 F.3d 651, 668 (3d Cir. 2012) (in reviewing a sufficiency of evidence claim, courts "examine the totality of the evidence, both direct and circumstantial, and interpret the evidence in the light most favorable to the

government as the verdict winner.") (internal quotation marks omitted). Thus, "'[t]he question is whether all the pieces of evidence against the defendant, taken together, make a strong enough case to let a jury find him guilty beyond a reasonable doubt.'" *United States v. Caraballo-Rodriguez,* 726 F.3d 418, 432 (3d Cir. 2013) (quoting *United States v. Cooper*, 567 F.2d 252, 254 (3d Cir. 1977)). It is "immaterial" that the evidence may permit a "less sinister conclusion" than the one the jury made. *United States v. Smith*, 294 F.3d 473, 478 (3d Cir. 2002). "'To sustain the jury's verdict, the evidence does not need to be inconsistent with every conclusion save that of guilt.'" *Id.* (quoting *United States v. Dent*, 1439 F.3d 180, 188 (3d Cir. 1998)).

Based on the application of these legal principles to the facts elicited at trial, the Court concludes that Muller's Motion for Judgment of Acquittal must be denied.

### 2.  **Analysis**

Muller makes a global challenge to the sufficiency of the evidence convicting him. He argues:

> The Government alleges that Muller was the driver of the red truck, and that he aided and abetted Wrensford in the killing of Gilbert [Hendricks, Jr.]. Yet no one has come forward to say they have seen Muller driving that red truck on the day of the incident or during the incident. The jury reached a verdict of guilt based on rumors and speculation. Hence, Muller['s] conviction was not based on proof beyond a reasonable doubt and should therefore be vacated.

(Dkt. No. 265 at 5). Muller's challenge must be rejected.

Muller's bald assertion—that "no one has come forward to say they have seen Muller driving that red truck on the day of the incident or during the incident"—clearly ignores the record evidence and some of the testimony adduced at trial. Despite Ms. Teague's claimed lack of memory on the witness stand concerning the shooting or the statements she made to the police following the incident in which she identified both Wrensford and Muller, she admitted to signing both statements. In the second statement, she identified Muller as the driver of the

truck—selecting him from a photo array of six individuals. (Gov't Ex. 73A, 73B). Viewing the evidence in the light most favorable to the prosecution, a rational jury could have concluded that Ms. Teague's lack of memory on the witness stand was feigned, and could have rejected her contention that she did not recall pertinent details about the shooting and her identification of the perpetrators.[2] It was within the province of the jury to determine Ms. Teague's credibility, and to determine how to assess her "inconsistent" statements. A rational jury could have believed the statements Ms. Teague made three days after the shooting in which she identified Muller from a photo array as the driver of the red truck, rather than her assertions on the witness stand that her mind was "blank." On a Rule 29 Motion, a court may not second-guess that determination. *See United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) ("Courts must be ever vigilant in the context of [Rule] 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury.").

In addition to Ms. Teague's identification of Muller as the driver, ample circumstantial evidence supports the conclusion that a rational jury could have found guilt beyond a reasonable doubt. *See United States v. Johnson*, 2010 WL 2103582, at *6 (D. Del. May 25, 2010) ("In conducting a sufficiency of the evidence review under Rule 29, the Court must examine 'the totality of the evidence, both direct and circumstantial.'") (quoting *United States v. Gambone*, 314 F.3d 163, 170 (3d Cir. 2003)); *see also United States v. Mister*, 2008 WL 4104569, at *2 (D.N.J. Sept. 3, 2008) ("In fact, purely circumstantial evidence is sufficient to sustain a conviction against a Rule 29 challenge") (citing *Bobb*, 471 F.3d at 494).

---

[2] Ms. Teague's desire not to testify was manifest. She explicitly stated that she did not want to testify and was doing so only because she was subpoenaed. She also had to be admonished by the Court on more than one occasion to respond to questions posed to her.

When Muller returned to work after the shooting, co-workers told Muller they heard he was involved in the shooting, and Muller responded that he heard the same thing but did not know what they were taking about. This exchange showed that Muller was aware of talk in the community implicating him. Although Muller told his grandfather with whom he was staying that he wasn't feeling well, he never told his supervisor that he was sick; that he needed to take time off from work; or that he planned to leave St. Croix to receive medical treatment. He simply disappeared from his job. Further, it was only the night before his flight when he was asking for a ride to the airport that Muller told his grandfather that he was leaving the island the next morning. Based on this evidence, a rational jury could have concluded that Muller—aware that his name was being mentioned in connection with the crime—decided to leave the island, and that he told his grandfather that he was not feeling well as a cover story to mask the true reason for his hasty departure. *See Maynard v. Gov't of V.I.*, 392 F. App'x 105, 120 (3d Cir .2010) ("'[E]vidence of a defendant's flight after a crime has been committed is admissible to prove his consciousness of guilt.'") (quoting *United States v. Green*, 25 F.3d 206, 210 (3d. Cir. 1994)). In addition, a rational jury could have concluded that Muller's response when confronted by Officer Garcia at the San Juan Airport—that he was expecting to be picked up, and then breaking into tears—was evidence of his guilt.

Accordingly, reviewing the record in the light most favorable to the prosecution, the Court concludes that a rational jury could have found Muller guilty beyond a reasonable doubt based on the evidence presented at trial. *Freeman*, 763 F.3d at 343. The Court will therefore deny Muller's Motion for a Judgment of Acquittal.

**B.  Motion for a New Trial**

A motion for a new trial is properly made under Fed. R. Crim. P. 33(a), which provides: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  A district court can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence

> only if it "believes that 'there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted.'" *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994) (quoting *United States v. Morales*, 902 F.2d 604, 606 (7th Cir. 1990)). Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case. *See United States v. Lacey*, 219 F.3d 779, 783-84 (8th Cir. 2000); *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988). We review the denial of a Rule 33 motion for abuse of discretion. *United States v. Jasin*, 280 F.3d 355, 360 (3d Cir. 2002).

*United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002). Rule 33 requests for a new trial "are not favored and should be granted sparingly and only in exceptional cases." *United States v. Silveus*, 542 F.3d 993, 1005 (3d Cir. 2008) (internal quotation marks omitted).

Defendant offers no argument that, based on the evidence adduced, a miscarriage of justice has taken place. He simply argues insufficiency of the evidence and seeks the alternative relief of a new trial. He has therefore failed to apprise the Court of the "serious danger that a miscarriage of justice has occurred." *Johnson*, 302 F.3d at 150. For the same reasons discussed above regarding the reasonable and logical inferences that can be drawn from the evidence presented, the Court—based on its independent assessment of the Government's case—does not believe that an innocent person has been convicted or that a miscarriage of justice has taken place. Accordingly, the Court will deny Defendant's Motion for a New Trial.

### III.   CONCLUSION

For the reasons stated above, the Court will deny Defendant Craig Muller's Rule 29 Motion for a Judgment of Acquittal or in the Alternative Rule 33 Motion for a New Trial. (Dkt. No. 264). An appropriate Order accompanies this Memorandum Opinion.

Date: November 30, 2015                         _____/s/_____
                                                WILMA A. LEWIS
                                                Chief Judge